# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AUTOMATED LAYOUT TECHNOLOGIES, LLC, | |
| Plaintiff, | 4:20CV3127 |
| vs. | ORDER |
| PRECISION STEEL SYSTEMS, LLC, and NICHOLAS DONNER, | |
| Defendants. | |

This matter is before the Court on the Motion for Leave to File Amended Answer and Counterclaim (Filing No. 31) and Motion to Stay (Filing No. 40) filed by the defendants, Precision Steel Systems, LLC ("PSS"), and Nicholas Donner ("Donner"). Plaintiff, Automated Layout Technologies, LLC ("ALT"), opposes both motions. For the following reasons, the Court will grant the motions.

## BACKGROUND

ALT was awarded United States Patent No. 10,576,588 ("the '588 patent") for what ALT asserts is a novel idea for a fully-automated computer numerical control ("CNC") marking machine for drawing layouts of metalworking projects, which reduces the time it takes workers to layout designs prior to fabrication. ALT named its CNC machine "the Lightning Rail" and debuted it at trade shows in 2018. (Filing No. 1 at p. 1). ALT alleges that Donner expressed interest in purchasing the Lightning Rail at a trade show in April 2018. ALT alleges Donner did not purchase a Lightning Rail and instead sought to copy it. ALT alleges Donner registered the domain name <PrecisionSteelSystems.com> in 2019 and incorporated PSS for the purpose of advertising and selling a "knock-off" Lightning Rail. ALT alleges PSS attempted to mislead potential customers into believing PSS's product was associated with ALT and the Lightning Rail by incorporating into its website meta-tags using ALT's trademarks.

ALT filed this action against Donner and PSS on October 30, 2020, for (1) infringement of Claim 1 of the '588 patent; (2) infringement of U.S. Trademark Registration No. 5,777,163 for the mark Lightning Rail; (3) infringement of ALT's rights in its unregistered trademarks; (4) unfair

competition and false or deceptive advertising under federal and state law; and (5) common law trademark infringement. (Filing No. 1). ALT alleges each element of Claim 1 of the '588 patent is present in PSS's product, the PLS-624, including, "one or more guide rails extending along one or more sides of the table [and] a beam located above the work surface, the beam extending between and fixed to beam supports each having a lower end movably engaging the one or more the guide rails." (Filing No. 1 at pp. 9, 11-12).

The defendants filed an answer on November 23, 2020, admitting Donner observed, but did not purchase, the Lightning Rail product at the 2018 trade show, formed PSS and registered the domain name, and at one time utilized the "LightningRail,Automated Layout Technology,ALT" meta tag, but no longer uses it. (Filing No. 14). The defendants otherwise denied ALT's allegations and affirmatively alleged that the '588 patent is invalid for failure to comply with the requirements of 35 U.S.C. §§ 101-103, and/or 112, and that PSS's product does not infringe the '588 patent. (Filing No. 14 at p. 9).

On December 30, 2020, this Court entered a Case Progression Order pursuant to the parties' agreed case schedule. (Filing No. 22; Filing No. 23). The Case Progression order set February 12, 2021, as the deadline to amend pleadings. On that date, the defendants filed the instant motion for leave to file an amended answer and counterclaim. (Filing No. 31). ALT primarily opposes the defendants' proposed addition of a counterclaim seeking a declaratory judgment that the '588 patent is invalid.

The defendants' proposed counterclaim alleges the '588 patent is invalid "because it describes a common industrial tool that didn't invent anything." The counterclaim alleges CNC tables are "commonly used devices for laying out and fabricating metal, and the concept of a gantry with a computer-controlled device moving through a series of coordinates to assist in the layout on such a table is not novel or non-obvious." The defendants' proposed counterclaim further alleges that ALT did not cite certain prior art in conjunction with the application for the '588 patent, and that examination of the prior art shows the '588 patent's subject matter is ineligible for patent. As an example, the defendants allege that one of the '588 patent's essential elements is "one or more adjustors attached to the table, each adjustor configured to adjust a position of each of one or more of the guide rails;" ALT's claim to an invention comprising "adjustors" for the "guide rails" is invalid because US Pub. No. 2018/0281121, U.S. Patent Application No. 15/923318 ('318), "Gantry Table with Adjustable Rails," teaches "an adjustment system for adjusting the vertical position of

the racks and rails." The defendants allege U.S. Patent Application No. 12/804,281 ('281) similarly teaches such adjustors. ([Filing No. 31-1 at pp. 12-13](#)).

The counterclaim incorporates an attachment, Exhibit A, which sets forth a summary and list of seven references to prior art as it existed at times relevant to the '588 patent consideration. The defendants allege the prior art in Exhibit A was not considered by the USPTO in conjunction with the application for the '588 patent. Exhibit A's summary provides:

> Tinsley (U.S. Serial No. 15/923,318) and Bales (U.S. Serial No. 12/804,281) disclose a CNC table with adjustors for at least adjusting the vertical position of guide rails. Giusti (U.S. Patent No. 10,150,131), Dupre (U.S. Patent No. 9,840,090), "CNC Airbrush Machine", "CNC Layout Tool" and "CNC Pen Holder" disclose an ink-dispensing unit for a CNC table. Tinsley and Bales may individually, or in combination, be combined with any of the ink-dispensing references to render Claim 1 of ['588] invalid under at least [35 U.S.C. § 103](#). A chart summarizing this conclusion is listed below.

([Filing No. 31-1 at p. 15](#)). The chart identifies the seven references to the prior art, provides their priority date and citation, and identifies the Limitations of '588 Claim 1 taught by each. The defendants provide an Index of Limitations taught by Claim 1, labeled A through H; for example, Limitation B is "One or more guide rails extending along one or more sides of the table," and Limitation C is "A beam located above the work surface, the beam extending between and fixed to beam supports each having a lower end movably engaging the one or more the guide rails." ([Filing No. 31-1 at p. 16](#)).

The defendants also provide separate summaries for each of the seven references to prior art. For example, the defendants identify U.S. Patent Application No. 12/804,281, entitled, "Mobile CNC Cutting Machine," filed by Bales on July 19, 2010, having a priority date of July 20, 2009 via the earlier filing of U.S. Provisional Patent No. 61/271,294. The defendants allege Bales discloses a CNC table commonly used for fabrication and manufacturing and includes guide rails, a gantry, and a tool bracket. The defendants continue:

> The tool bracket may be attached to any type of tool, and the guide rails and gantry are operable to move the tool bracket along any point on the X-axis or Y-axis relative to the work surface. Importantly, Bales discloses set screws and hexagonal cap screws that adjust the guide tail. "The mounting is designed to adjust inwards and outwards, up and down, and tilt from side to side. The design allows the user to easily adjust the linear guide rail to maintain proper alignment." Bales discloses relevant prior art for claims 1-22 of the '588 patent. Bales was not considered in the original prosecution of patent '588.

([Filing No. 31-1 at p. 17](#)).  The defendants allege Bales teaches Limitations A, B, C, D, and G of Claim 1 of the '588 patent.  The defendants similarly summarize each of the other six references to the prior art.  ([Filing No. 31-1 at pp. 16-19](#)).

Based on the above, the defendants' proposed counterclaim alleges the '588 patent's subject matter is ineligible for patent because: 1) the '588 patent fails to describe a new and useful process, machine, or improvement for purposes of [35 U.S.C. § 101](#); 2) the invention claimed by the '588 patent was patented, described in a printed publication, or otherwise available to the public before the effective filing date of the claimed invention, for purposes of § 102(a)(1); 3) the invention claimed by the '588 patent was described in a patent issued under § 151 or in an application for patent published or deemed published under § 122(b), in which the patent or application names another inventor and was effectively filed before the effective filing date of '588 patent, for purposes of § 102(a)(2); and 4) any differences between the invention claimed in the '588 patent and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention for purposes of § 103.  ([Filing No. 31-1 at pp. 11-12](#)).

The defendants also move the Court for a stay of this litigation pending the conclusion of proceedings related to PSS's request for Ex Parte Reexamination of the '588 patent by U.S. Patent and Trademark Office ("USPTO").  ([Filing No. 40](#)).  PSS filed a request with the USPTO for ex parte reexamination of claims in the '588 patent pursuant to [35 U.S.C. § 302](#) based on the defendants' discovery of prior art, which the defendants allege creates questions of patentability of all claims of the '588 patent.  The defendants filed the pending motion to stay on March 4, 2021, prior to the Director of the USPTO's determination as to whether to order reexamination.  ([Filing No. 40](#)).  While the motion to stay was under consideration before this Court, the USPTO granted PSS's request for ex parte reexamination of the '588 patent.  ([Filing No. 56](#)).

ALT opposes both of the defendants' motions.  ALT argues that the defendants' motion for leave to amend to add the proposed counterclaim should be denied because the amendment is futile.  ALT contends the proposed counterclaim "contains little more than a threadbare recitation of the statutes devoid of factual content" and therefore fails to meet the requisite pleading standard of *[Ashcroft v. Iqbal](#)*, 556 U.S. 662, 678 (2009) and *[Bell Atlantic Corp. v. Twombly](#)*, 550 U.S. 544, 566 (2007).  ([Filing No. 36 at p. 7](#)).  ALT further opposes a stay of this case because it would be prejudiced by PSS's ongoing infringement, the undue delay in the case, and loss of discovery from

third parties. ALT also argues a stay will not simplify the issues in this case or reduce the burden on the parties or the Court. (Filing No. 45).

## ANALYSIS

### I. Motion to Amend

Federal Rule of Civil Procedure 15 provides that the Court should "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a). Nevertheless, a party does not have an absolute right to amend, and "[a] district court may deny leave to amend if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (internal quotation and citation omitted). ALT opposes the defendants' motion for leave to amend solely on the basis of futility. ALT contends the defendants' proposed counterclaim fails to state a claim for relief because the defendants merely recite statutory sections and identify the alleged prior art without including factual allegations explaining how the prior art invalidates any claim of the '588 patent. ALT argues the defendants have not sufficiently pled facts required under the pleading standard of *Iqbal/Twombly*, and therefore the counterclaim would not survive a motion to dismiss. (Filing No. 36 at pp. 8-15).

"An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018)(quoting *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014). "To survive a motion to dismiss for failure to state a claim, the complaint must show the plaintiff 'is entitled to relief,' Fed. R. Civ. P. 8(a)(2), by alleging 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hillesheim*, 897 F.3d at 955 (quoting *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017)(en banc)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566 (2007)). The purpose of the plausibility standard "is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014)(quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th

Cir. 1999)). When considering a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the nonmoving party. See *Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); Fed. R. Civ. P. 12(b)(6). Factual allegations that represent "legal conclusions or formulaic recitation of the elements of a cause of action . . . may properly be set aside." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 677) (internal citations omitted). The court ordinarily does not consider matters outside the pleadings on a motion to dismiss, see Fed. R. Civ. P. 12(d), but the court may "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011)(quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)).

After review of the defendants' proposed counterclaim, the Court finds it alleges sufficient facts to survive a motion to dismiss as to its claims for invalidity under §§101, 102, and 103. The defendants' proposed counterclaim alleges ALT's patent is invalid because it does not add anything inventive to the state of the art and/or because it is obvious from prior art. The defendants allege ALT's invention, a CNC table, is a common industrial tool and ALT's "concept of a gantry with a computer-controlled device moving through a series of coordinates to assist in the layout on such a table is not novel or non-obvious." The defendants' proposed counterclaim cites seven specific references to prior art and identifies and explains the limitations of Claim 1 of the '588 patent taught by each. Unlike the cases cited by ALT, wherein the counterclaims simply alleged invalidity and cited to the statute with no factual allegations, the defendants' proposed counterclaim contains facts supporting its claims as to the invalidity of the '588 patent. See *Protege Biomedical, LLC v. Z-Medica, LLC*, 394 F. Supp. 3d 924, 943 (D. Minn. 2019)(collecting cases dismissing counterclaims for invalidity where the counterclaims "failed to root the claims in any factual allegations whatsoever."); see also, *The Beer Barrel, LLC v. Deep Wood Brew Prod., LLC*, No. 2:16-V440-DN-BCW, 2016 WL 5936874, at *6 (D. Utah Oct. 12, 2016)(concluding invalidity claims were sufficiently pled where the plaintiff alleged the patent was described and shown in printed publication or available to the public one year before the filing date of the patents at issue and where the plaintiff identified specific patents that constituted prior art invalidating the patents at issue); *PetEdge, Inc. v. Marketfleet Sourcing, Inc.*, No. CV 16-12562-FDS, 2017 WL 2983086, at *4 (D. Mass. July 12, 2017)(finding counterclaim sufficiently pled claims for invalidity under §§ 102-103 where the counterclaim identified a specific patent and provided a specification from the earlier

patent appearing substantially similar to a specification from the patent at issue); *cf. Summers Mfg. Co., Inc. v. Tri-Cty. AG, LLC*, 300 F. Supp. 3d 1025, 1041 (S.D. Iowa 2017)(dismissing invalidity counterclaim where the defendant only identified, but did not describe, an invalidating prior art, and did not put the plaintiff on notice of any limitation the defendant contended the prior art shared with the plaintiff's patent).

Although ALT contends the proposed counterclaim simply recites statutory sections and states legal conclusions without any factual support, review of the entirety of the proposed counterclaim, including Exhibit A attached to the proposed pleading, shows that is not the case. See *Braden*, 588 F.3d at 594 ("The complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."). The defendants' proposed counterclaim provides ALT with sufficient information to put ALT on notice of the specific grounds on which the defendants claim the '588 patent is allegedly invalid. Reviewing the proposed counterclaim as a whole, the Court finds the defendants have pleaded facts sufficient to support its claims for invalidity under 35 U.S.C. §§ 101, 102, and 103, and thus the proposed amendment is not futile. Therefore, the Court finds the defendants should be granted leave to file their proposed amended answer and counterclaim.

## II. Motion to Stay

The defendants also move the Court for a stay of this litigation pending the conclusion of USPTO's ex parte reexamination of the '588 patent and any resulting certification. On February 25, 2021, PSS filed a request with the USPTO for ex parte reexamination of claims in the '588 Patent pursuant to 35 U.S.C. § 302, based on the defendants' alleged discovery of prior art creating questions of patentability of all claims of the '588 patent. The defendants filed the motion to stay on March 4, 2021, prior to the Director of the USPTO's determination as to whether to order reexamination. (Filing No. 40). While the motion to stay was under consideration before the court, the USPTO granted the request for ex parte reexamination of the '588 patent. (Filing No. 56).

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248 (1936). A federal district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681 (1997). In evaluating a stay, a court should consider several relevant factors, including

"maintaining control of its docket, conserving judicial resources, and the important interest of providing for the just determination of cases pending before the court," *Rosales v. Heath*, No. 8:17CV87, 2017 WL 2533365, at \*2 (D. Neb. June 9, 2017)(Zwart, M.J.), and the "possible damage, hardship and inequities to the parties to the lawsuit and the relationship of the stay to the fulfillment of judicial objectives of simplification of the issues in question and trial of the case." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, No. 806CV458, 2007 WL 2344805, at \*1 (D. Neb. Aug. 14, 2007)(Bataillon, J.)(quoting *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991)). A stay may be warranted where the matter implicates "rights which are inextricably tied to [a] pending . . . claim in [another court]." *Id.* (quoting *Kemp v. Tyson Seafood Grp., Inc.*, 19 F. Supp. 2d 961, 965 (D. Minn. 1998)). "Courts have adopted a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." *VData, LLC v. Aetna, Inc.*, No. CIV 06-1701 JNE/SRN, 2006 WL 3392889, at \*4 (D. Minn. Nov. 21, 2006). Courts favor staying litigation pending the outcome of reexamination proceedings due to the particular advantages presented by waiting for the reexamination to conclude, including:

1. All prior art presented to the court will have been first considered by the PTO, with its particular expertise.
2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
4. The outcome of the reexamination may encourage a settlement without the further use of the court.
5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.
7. The cost will likely be reduced both for the parties and the court.

*VData, LLC*, 2006 WL 3392889, at \*6 (quoting *Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, No. 85 C 7565, 1987 U.S. Dist. LEXIS 15033, \*3-4 (E.D. Ill. Jan. 30, 1987).

In weighing the above factors, the Court finds that a stay of the case pending the reexamination proceedings is warranted. First, although ALT contends it will be prejudiced by a stay because reexamination is a lengthy process that is likely to do little to resolve the parties' dispute, (Filing No. 45 at pp. 12-13), "not all delay is necessarily unduly prejudicial and here any cost of the delay is likely offset by the gains to be achieved by obtaining the PTO's expert guidance on these matters." *Card Tech. Corp. v. DataCard Corp.*, No. 05–2546 (MJD/SRN), 2007 WL

2156320, at *6 (D. Minn. July 23, 2007). ALT further argues a stay will not simplify the issues in this case, resolve all of ALT's claims, or reduce the burden on the parties or the Court. (Filing No. 45 at pp. 15-18). It is true that ALT's claims for trademark infringement and unfair competition will not be resolved by the reexamination proceedings. However, ALT's claim for patent infringement, and Defendant's counterclaim for invalidity, will be significantly, if not conclusively, impacted by the reexamination proceedings. If the reexamination results in modification or cancellation of the patent, the stay will minimize the possibility that the Court and the parties needlessly expend resources on proceedings related to the infringement/invalidity issues. See *Card Tech. Corp.*, 2007 WL 551615, at *3 ("[C]ommon sense counsels that it is usually prudent for a court to await the PTO's reassessment of the patents at issue before resuming litigation over the validity, enforceability or infringement of those patents."). And, even if the '588 patent emerges completely intact after reexamination, the Court will still have the benefit of the USPTO's analysis when this action resumes. See *Telebrands Corp. v. Seasonal Specialties, LLC*, No. 17-CV-4161 (WMW/HB), 2018 WL 1027452, at *4 (D. Minn. Feb. 23, 2018)( "[S]taying patent litigation pending reexamination or post-grant review can serve judicial economy," and "can help limit discovery problems relating to prior art, encourage settlement, reduce the complexity and length of litigation, narrow the issues and defenses at play in the lawsuit, and reduce costs for the parties and the court."); see also *Card Tech. Corp.*, 2007 WL 551615, *4 ("[E]ven if the reexamined patent emerges unscathed and completely intact, the Court has the benefit of the PTO's expert guidance on the prior art it addressed.").

The early stage of this case also weighs in favor of a stay. Although this case was filed last fall and the parties have exchanged some written discovery, the majority of the case progression deadlines have not expired. The parties' case progression schedule contemplates the preparation and filing of claim construction briefs this summer for a claim construction hearing set on September 10, 2021, fact discovery and deposition deadlines are set in December 2021, expert disclosure and expert discovery was to conclude at the end of February 2022, and this case has not been set for trial. (Filing No. 23). As such, the parties have not yet expended significant time and effort on the patent claims at issue, and staying the case now will prevent them—and the court—from expending resources doing so. See, e.g., *Honeywell Int'l, Inc. v. Furuno Elec. Co.*, No. CIV. 09-3601, 2010 WL 3023529, at *3 (D. Minn. July 30, 2010)("Without a stay, discovery may be far broader in scope than necessary, and the Court might spend time issuing *Markman* interpretations of and examining

the validity of claims that may be modified or eliminated through the reexamination process."); *Niazi Licensing Corp. v. Bos. Sci. Corp.*, No. CV 17-5094 (WMW/BRT), 2018 WL 6012443, at *3 (D. Minn. Nov. 16, 2018)(finding continued stay pending reexamination was warranted where, "[a]t the time this case was first stayed, fact discovery had just begun and [the plaintiff] had served infringement contentions, but fact discovery deadlines, along with those for Defendants' contentions, claim construction, expert discovery, and dispositive motions, were all stayed"). "Courts which have denied stays pending reexamination proceedings have generally done so where the request for reexamination came late in the litigation, after extensive discovery or trial preparation," which is not the case here. *Select Comfort Corp., v. Tempur Sealy Int'l, Inc.*, No. CV 14-245 (JNE/JSM), 2014 WL 12600114, at *9 (D. Minn. Oct. 10, 2014).

ALT further opposes a stay of this case because it would be prejudiced by the ongoing infringement by PSS, ALT's direct competitor. (Filing No. 45 at pp. 8-10). As recognized by other courts, money damages and, where appropriate, a permanent injunction, are typical remedies for harm caused by infringement, including loss of sales and market share. See *Oticon A/S v. GN Resound A/S*, No. 15-CV-2066 (PJS/HB), 2015 WL 5752429, at *2 (D. Minn. Aug. 5, 2015)(finding stay pending reexamination proceedings was appropriate despite the fact the parties were "head-to-head competitors in a market with relatively few competitors" because harm attributable to the defendant's alleged infringement could be remedied by monetary damages and/or injunction). ALT has not adequately explained why, even if the stay prolonged this case, the harm attributable to the defendants' alleged ongoing infringement could not be remedied if ALT ultimately prevails. Additionally, ALT did not seek a temporary restraining order or preliminary injunction at the outset of this case, meaning, PSS can continue selling its alleged infringing product whether this litigation continues or whether the case is stayed, further suggesting ALT would not be unduly prejudiced by a stay. See *Phil-Insul Corp. v. Airlite Plastics, Inc.*, No. 8:12CV151, 2012 WL 5193814, at *3 (D. Neb. Oct. 18, 2012)(Gossett, M.J.)("Plaintiff decided not to seek a preliminary injunction against Defendants in this action, which tends to suggest that Plaintiff would not be unduly prejudiced by staying this litigation."); see also *Carlson Pet Prod., Inc. v. N. States Indus., Inc.*, No. 017CV02529PJSKMM, 2018 WL 1152001, at *6 (D. Minn. Mar. 5, 2018)(finding the plaintiff's failure to seek a temporary restraining order or preliminary injunction weighed against finding undue prejudice caused by a stay pending reexamination).

ALT also argues it will be prejudiced by a lengthy stay because it increases the probability that third-party discovery and witnesses may be lost. (Filing No. 45 at pp. 14-15). ALT's concerns regarding potential loss of discovery from third parties during a lengthy stay are valid, as any delay in litigation theoretically increases the possibility that evidence will be lost or that memories may fade. See *Select Comfort Corp.*, 2014 WL 12600114, at *7 (finding a stay pending reexamination was warranted despite acknowledging that "delaying litigation may theoretically increase the possibility that valuable evidence will be lost."). Nevertheless, the Court is not convinced that the delay will cause undue prejudice to ALT or that the benefits of a stay are outweighed by those concerns. Counsel for the defendants have provided a litigation hold memorandum to the defendants, and Donner provided that memorandum to two of the primary non-parties with discoverable information: Robert Gaskins of ProCut CNC, the third party that assisted Donner in building the defendants' product, and Jamie Kathol, who built PSS's website. Donner instructed both third parties to retain documents relevant to this case. (Filing No. 41-1). And, although third party discovery may be of some relevance for ALT to support its claims, the majority of discovery relevant to ALT's claims would be in the defendants' possession rather than in the possession of third parties. See *Carlson Pet Prod.*, 2018 WL 1152001, at *6 (considering litigation hold and minimal importance of witness testimony, the plaintiff would not be unduly prejudiced by the delay caused by a stay).

In sum, the Court finds that a stay pending the reexamination of the '588 patent is appropriate because this case is in the early stages, reexamination proceedings are likely to simplify the issues in this suit, a stay will reduce the costs and resources expended by the parties and the Court, and ALT will not be unduly prejudiced by the stay. Accordingly,

**IT IS ORDERED:**
1. Defendants' Motion for Leave to File Amended Answer and Counterclaim (Filing No. 31) is granted;
    a. If Plaintiff does not file an objection to the portion of this Order granting Defendants' motion to amend on or before **May 20, 2021,** Defendants shall file their proposed amended pleading on or after **May 21, 2021**;
    b. If Plaintiff does file a timely objection to the portion of this Order granting Defendants' motion to amend, Defendants shall wait to file their amended pleading until after the Court's resolution of Plaintiff's objection.

2. Defendants' Motion to Stay ([Filing No. 40](#)) is granted.  This case is stayed pending the reexamination of U.S. Patent No. 10,576,588 by the United States Patent and Trademark Office or until further order of the Court.  Defendants shall file a status report status concerning the status of the reexamination proceedings and of this case on **August 4, 2021**, and every 90-days thereafter, until the reexamination proceedings are complete.
3. Failure to file a timely objection may constitute a waiver of any objection to this Order.  See NECivR 72.2.

Dated this 6th day of May, 2021.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge