IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AUTOMATED LAYOUT TECHNOLOGIES, LLC, | |
| Plaintiff, | 4:20-CV-3127 |
| vs. | MEMORANDUM AND ORDER |
| PRECISION STEEL SYSTEMS, LLC, et al., | |
| Defendants. | |

This matter is before the Court on a number of pending motions. However, the parties stipulated that various motions that had been filed are now moot. Filing 207. Thus, as stipulated, the Court will address the defendants' motion to Bifurcate and Stay Count II of the plaintiff's complaint (filing 181), and the defendants' partial motion to dismiss (filing 129). In doing so, the Court will grant the plaintiff's unopposed motions to supplement the evidentiary record in support of its claim construction brief (filing 199; filing 210), as these supplemental materials are also relevant to the issue of bifurcation.

I. DEFENDANTS' MOTION TO BIFURCATE AND STAY

In its previous Order, the Court discussed the factual and procedural history of this matter at length. *See* filing 168. Therefore, at this time, the Court will more narrowly focus on the facts and issues directly relevant to the pending motions.

This case involves machinery used in the fabrication of commercial metal handrails and railings. Filing 124 at 1. The plaintiff, Automated Layout

Technologies ("ALT"), claims that its machine—the "Lightning Rail"—was the first of its kind to fully automate the process for "laying out" handrail designs onto metal work surfaces, making it more accurate and expeditious than the typical process, which requires workers to manually draw designs onto the work surface using markers and tape measures. Filing 124 at 4. The Lightning Rail is covered by U.S. Patent No. 10,576,588 (the "'588 patent"), which was officially issued by the U.S. Patent and Trademark Office ("USPTO") on March 3, 2020. Filing 124 at 5. According to ALT, the machine is also covered by U.S. Patent No. 11,426,826 (the "'826 patent"), which was officially issued by the USPTO on August 30, 2022, and which it claims is a valid continuation of the '588 patent. *See* filing 124 at 5; filing 137 at 30.

ALT's original complaint, which was filed on October 30, 2020, alleged in Count I that Nicholas Donner, the owner of defendant-entities Precision Steel Systems, LLC., and Donner Steel Works, Inc., produced and marketed a similar automated layout machine—the PLS-624—in violation of its '588 patent. Filing 1 at 9. And in December 2022, four months after the USPTO officially issued the '826 patent, ALT filed its Third Amended Complaint, additionally alleging in Count II that a redesigned version of the PLS-624 violated its '826 patent.[1] Filing 124 at 21. In sum, the timeline of relevant events is as follows:

- September 5, 2017: ALT filed the '588 patent application

---

[1] In response to ALT's original complaint, the defendants' answer included a counterclaim. Filing 64. ALT moved to dismiss this counterclaim. Filing 90. The Court agrees this motion is moot given the plaintiff's subsequent amended complaints. *See* filing 183 at 12.

2

- March 2, 2020: Mr. Donner allegedly incorporated Precision Steel Systems and began marketing the original PLS-624

- October 29, 2020: ALT filed the '826 patent application as a continuation of the '588 patent

- October 30, 2020: ALT filed its original complaint alleging the defendants' original PLS-624 infringed on the '588 patent

- May 13, 2022: Mr. Donner informed ALT of the redesigned PLS-624

- August 30, 2022: the USPTO officially issued the '826 patent

- December 21, 2022: ALT files its Third Amended Complaint, adding Count II, which alleges that the redesigned PLS-624 infringes on the '826 patent

The defendants contest ALT's claim that the '826 patent is a valid continuation of the '588 patent under 35 U.S.C. § 120. Filing 183 at 6. As previously explained by the Court, if the '826 patent adds new matter and is *not* a valid continuation of the earlier '588 patent, it is not entitled to claim priority to the '588 patent's September 2017 application date. Filing 168 at 10-11. Instead, the '826 patent would maintain its original application filing date, and according to the defendants, would therefore be wholly invalid, as the original PLS-624 would be anticipated prior art. Filing 183 at 4. In other words,

if the defendants are correct that the '826 patent is not a valid continuation of the '588 patent, Count II of the plaintiff's complaint would be without merit.

This exact issue was considered when ruling on ALT's motion for preliminary injunction, which sought to enjoin the defendants from making and selling the redesigned PLS-624 in violation of the '826 patent. Filing 137. Ultimately, the Court denied this motion on the basis that ALT failed to demonstrate it was likely to succeed on the merits and that defendants' invalidity defense regarding the '826 patent lacked substantial merit. Filing 168. In this way, the priority issue was considered only in a preliminary manner and the Court's decision was based on the burden of proof—ALT "offered no rebuttal argument or evidence" addressing the defendants' argument that the '826 patent was not a valid continuation of the '588 patent. Filing 168 at 16. And at that time, the USPTO had yet to rule on the defendants' *ex parte* reexamination, which simultaneously raised the same challenge to the validity of the '826 patent as a continuation of the '588 patent. Filing 168 at 20.

Months later, the USPTO issued a "non-final office action" in response to the defendants' *ex parte* reexamination. Filing 182 at 2. The USPTO preliminarily determined that the '826 patent was not entitled to the priority date of the '588 patent and rejected all claims of the '826 patent as unpatentable over prior art. Filing 182-1. Soon after, the defendants filed their motion to Bifurcate and Stay Count II. Filing 181. According to the defendants, since Count I and Count II each deal with a separate patent and a separate PLS-624 machine, it is appropriate and most efficient to try the claims separately. Filing 183 at 17. Additionally, the defendants argue that the proceedings involving Count II should also be delayed—whether through

4

bifurcation or a stay—until the USPTO's pending reexamination has concluded, given that a favorable final decision from the USTPO would render Count II moot. Filing 183 at 24.

Federal Rule of Civil Procedure 42(b) vests district courts with the power to order a separate trial of one or more claims. The Court's discretion to bifurcate issues for trial is broad. *See O'Dell v. Hercules Inc.*, 904 F.2d 1194, 1201-02 (8th Cir. 1990). In exercising discretion, district courts should consider the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities of confusion. *Id*. In sum, the Court should decide the most efficient and effective method of disposing of the issues without prejudicing the parties. *Rolscreen Co. v. Pella Prods.*, 64 F.3d 1202 (8th Cir. 1995).

District courts also have inherent power to manage their dockets, which includes the authority to stay proceedings pending the reexamination of a patent by the USPTO. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988). In deciding whether a stay is appropriate, the Court should consider multiple factors, including: (1) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; (2) whether a stay will simplify the issues in question and streamline the trial; (3) whether a stay will reduce the burden of litigation on the parties and the court; and (4) whether discovery is complete and whether a trial date has been set. *Murata Mach. USA v. Daifuku Co. Ltd.*, 830 F.3d 1357, 1361-62 (Fed. Cir. 2016).

In urging the Court to bifurcate and stay Count II, the defendants emphasized the USPTO's non-final action in its reexamination, which again concluded (1) the '826 patent was not a valid continuation of the '588 patent, and (2) the claims of the '826 patent were unpatentable over prior art. Filing

182-1; filing 183 at 19. The Court agrees that this preliminary decision may have provided support for bifurcation. However, after hearing the plaintiff's arguments on the issue, the USPTO has taken further action in the reexamination. *See* filing 199. In its "Notice of Intent to Issue an *Ex Parte* Reexamination Certificate," the USPTO notified the parties of its intent to reverse the conclusions in its non-final action, finding that the claims of the '826 patent *are* entitled to the priority date of the '588 patent, and as a result, it will confirm all the claims as patentable. Filing 199-1. Specifically, in light of the '826 patent's earlier priority date, the USPTO determined that the inventions submitted by the defendant were not "prior art." Filing 199-1.[2] And just days ago, on November 9, 2023, the USPTO issued this Certificate, officially confirming the patentability of the contested claims of the '826 patent. *See* filing 210.

Given these circumstances, judicial economy will not be served by delaying the progression of Count II. The USPTO's recent action concluded the reexamination process, *In re Bass*, 314 F.3d 575, 577 (Fed. Cir. 2002), and confirmed the '826 patent as a valid continuation of the '588 patent. Filing 199-1. The defendants concede they have two months to appeal this decision to the

---

[2] In ruling on the plaintiff's motion for preliminary injunction, the Court determined that the defendants had raised "a substantial question of invalidity" based on their priority date arguments. And since the plaintiff failed to present *any* argument that it was likely to overcome this invalidity defense and succeed on the merits, the plaintiff's motion was denied. Filing 168. Thus, the Court was not able to consider both parties' substantive arguments regarding the validity of the '826 patent's continuation status in this preliminary Order. In this way, the Order on preliminary injunctive relief provides only limited insight into the merits of this issue or the USPTO's decision.

Patent and Trial Appeal Board. Filing 183 at 8. From there, the average appeal takes "up to a year, or longer." Filing 183 at 8. Furthermore, while final reexamination findings from the USPTO are evidence that courts must consider, they are not binding or dispositive. *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC,* 879 F.3d 1332, 1341 (Fed. Cir. 2018). In fact, a reexamination confirming a claim does not preclude a patent challenger from meeting its burden of proving invalidity, and the Court must reach an independent conclusion on this issue. *Id.* Thus, it is not economical for the Court to cease the progression and its independent consideration of Count II—potentially for over a year—while it awaits the results of a (possible) appeal, especially since the ultimate decision of the USPTO is not binding on the Court. Additionally, there is no indication the USPTO will reject the '826 patent, meaning it is unlikely that its decision on appeal would render Count II moot and "simplify the issues for trial." *See* filing 183 at 23.

And the Court is not persuaded by the defendants' other arguments in favor of bifurcation or stay. First, the defendants argue that bifurcating Count II will clarify the issues and minimize the risk of jury confusion. Filing 183 at 16. According to the defendants, "Count I only asserts infringement against the original design of the PLS-624, and Count II only asserts infringement against the redesign of the PLS-624. Thus, there are different patents with different claim language asserted against different machines and so different factual issues as to infringement." Filing 183 at 15.

This is technically true. Because of this, it is possible that confusion may arise *if* similar claim terms in each patent are given different constructions. But the Court—which is tasked with deciding the questions of law presented by claim construction disputes—is well equipped to make these

7

determinations. And any jury confusion that may occur because of this possible overlap would be minimal compared to the confusion and labor duplication caused by trying Count I and Count II separately. Clearly, a key issue in this case is whether the '826 patent is a valid continuation of the '588 patent. To make this determination, the ultimate issue is whether the claims of the '826 patent are supported by the written description of the '588 patent. Thus, the patents must be considered together when making this determination.

Another key factual issue highlighted by the defendants—whether ALT's motive for filing the '826 patent as a continuation application constituted inequitable conduct to patent around the re-designed PLS-624—would also be best decided after considering the history of the patents and the dispute between the parties in their entirety. Such issues cannot be easily decided in a vacuum. In fact, attempting to do so is likely to breed confusion given that the patents are closely related—being part of the same family and sharing a specification—and the dispute involves the same parties and similar accused products. Although separate legal and factual issues may arise with each claim, that is often the case. And juries are often tasked with understanding and deciding complex issues. It is the job of the parties and the Court to aid with this process by clearly presenting and instructing on the issues at hand.

Since the issues presented by Counts I and II are closely intertwined, much of the discovery related to these matters also overlaps, which is another important consideration. ALT has completed fact discovery for its infringement claims involving both the '588 and the '826 patent. Filing 184 at 10. In fact, the parties agree that the only remaining fact discovery pertaining to Count II is that related to the defendants' defenses and counterclaims. Filing 183 at 21. And since this Order will also decide the defendants' pending motion to

dismiss, the path will be clear for the defendants to file their responsive pleadings and conduct discovery before the May 2024 substantive motions deadline. *See* filing 183 at 19; filing 179 at 2. In other words, the progression of both counts can continue as scheduled with little to no prejudice to the defendants.

For these reasons, a delay—whether through a stay or bifurcation—is not appropriate. This litigation has been pending for years and already subject to a lengthy stay. Any further delay (especially an entirely separate trial involving similar issues and the same parties) will undeniably increase the burden of litigation on the parties and the Court. While confusion may arise in this case, that is a natural consequence of lay jurors being presented with complex patent issues. And this Court believes that presenting the fact finder with the full picture of this dispute will ultimately improve clarity and understanding. Hypothetical confusion from claim constructions that have yet to be decided is insufficient to overcome all the factors weighing in favor of keeping these claims together and the case progressing. For these reasons, the Court will deny the defendants' motion to bifurcate or stay Count II.

## II. DEFENDANTS' MOTION TO DISMISS

The defendants have also moved to dismiss the trademark infringement and deceptive trade practices claims alleged in Counts III, IV, V, VI of the plaintiff's Third Amended Complaint. Filing 130. Specifically, Count III alleges trademark infringement under the Lanham Act (15 U.S.C. § 1114), Count IV alleges unfair competition under the Lanham Act (15 U.S.C. § 1125(a)), Count V alleges violations of Nebraska's Uniform Deceptive Practices Act (Neb. Rev. Stat. § 87-301, et seq.), and Count VI alleges trademark infringement in violation of Nebraska common law. Filing 124 at 26-28. The crux of each of

these claims is that the defendants used the plaintiff's trademarks—"Lightning Rail," "Automated Layout Technology," and "ALT," in connection with their website and advertising to cause confusion and lead potential purchasers to believe its products were with associated with ALT. Filing 124 at 24-28. The defendants contend, however, that ALT's claim that the defendants used ALT trademarks in meta-tags and/or in the source codes of its website are insufficient on their own to state such claims. The Court agrees.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* While the Court must accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

As pled, all of ALT's trademark infringement and unfair competition claims—whether arising under the Lanham Act, Nebraska statutes, or Nebraska common law—depend upon a showing that the defendants' use of ALT's trademarks was likely to cause confusion. *Jacobs v. Fareportal, Inc.*, No. 8:17CV362, 2019 WL 11029415, at *9 (D. Neb. Sept. 19, 2019) (citing *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 n. 3 (8th Cir.

10

2010)). Thus, for each of these claims, the same six-factor test is relevant to deciding whether ALT has pled a likelihood of confusion, which includes:

> (1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to "pass off" its goods as those of the trademark owner; (5) incidents of actual confusion; and, (6) the type of product, its cost, and conditions of purchase.

*Tecumseh Poultry LLC v. Perdue Holdings, Inc.*, No. 4:12-CV-3032, 2012 WL 3018255, at *4 (D. Neb. July 24, 2012) (quoting *Sensient Techs. Corp*, 613 F.3d at 763). While this is typically a fact-intensive inquiry that is not appropriately resolved on a motion to dismiss, there are circumstances where allegations of likely confusion are implausible. *See id.*; *see also Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 429 (5th Cir. 2021).

  Here, ALT's claims rest solely on its allegations that the defendants' website used meta-tags that included its name and trademarks. Filing 124 at 26-28. According to ALT, meta-tags "are information in a website's source code that typically are not visible to a user view the website." Filing 124 at 11. Instead, "[w]hen an Internet user searches for a particular keyword or phrase on a search engine, the search engine is more likely to return search results containing websites having that keyword in its source code." Filing 124 at 11. Therefore, by embedding ALT's trademarks in its meta-tags, the defendants allegedly intended to divert users who searched those terms to their website, as opposed to ALT's website. Filing 124 at 12.

11

In cases involving the use of trademarks in meta-tags, courts have held that there is a difference between consumer confusion and distraction, the latter of which is insufficient to state a plausible claim. *Jim S. Adler, P.C.*, 10 F.4th at 428. For example, if an internet search using certain marks returns advertisements or a website that are not clearly labeled, and which consumers are likely to believe are affiliated with the trademark owner, consumer confusion *may* be plausibly alleged. *See id*. Likewise, if a customer is "hijack[ed] to another website by making the customer think he or she is visiting the trademark holder's website (even only briefly)" when clicking on generic advertisements, consumer confusion may be plausible. *See id*. However, distracting a customer with another choice, when it is clear that it is a choice, does not amount to consumer confusion. *Id*.

ALT has only alleged facts to support a plausible claim of consumer distraction. Besides the defendants' alleged use of meta-tags that incorporated ALT's trademarks, there are no facts from which the Court could reasonably infer a likelihood of consumer confusion. ALT does not allege that the defendants' use of its trademarks directed consumers to generic or unlabeled advertisements that could lead consumers to believe the defendants' website or products were affiliated with ALT. Instead, ALT broadly claims the meta-tags were used with the hopes of diverting individuals to the defendants' website. Filing 124 at 12. However, the evidence of the defendants' website—as provided by ALT—shows that it is clearly marked as belonging to Precision Steel Systems. Filing 124-4; filing 124-5. The website describes and offers for sale the PLS-624. Filing 124-4; filing 124-5. And on the website there is no mention of ALT or the Lightning Rail.

12

These allegations do not allow the Court to reasonably infer that the defendants attempted to "pass off" their machine as that of the trademark owner, or that there was a likelihood of consumer confusion. The other allegations highlighted by ALT—that the "defendants' conduct was likely to cause confusion" and "was committed with the intent to cause confusion"—are conclusory, at best. Filing 144 at 4. Considering all the facts in the light most favorable to ALT, it has plausibly alleged consumer distraction, which does not support a cause of action. *See Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.,* No. CV 19-513, 2022 WL 3647817, at *5 (E.D. Pa. Aug. 24, 2022). For these reasons, the Court will grant the defendants' motion to dismiss Counts III, IV, V, and VI of the plaintiff's complaint.

Accordingly,

IT IS ORDERED:

1. The parties' stipulation (filing 207) is approved.

2. The plaintiff's motion to dismiss the defendants' counterclaim (filing 90) is denied without prejudice, as stipulated by the parties.

3. The defendants' motion for summary judgment (filing 93) is denied without prejudice, as stipulated by the parties.

4. The plaintiff's motion to deny summary judgment (filing 98) is denied without prejudice, as stipulated by the parties.

5. The defendants' partial motion to dismiss (filing 129) is granted.

6. The defendants' motion to bifurcate or stay (filing 181) is denied.

7. The plaintiff's unopposed motion to supplement the evidentiary record (filing 199) is granted.

8. The plaintiff's unopposed motion to supplement the evidentiary record (filing 210) is granted.

Dated this 20th day of November, 2023.

BY THE COURT:

John M. Gerrard
Senior United States District Judge