IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

AUTOMATED LAYOUT TECHNOLOGIES, LLC,

Plaintiff and counterclaim defendant,

vs.

PRECISION STEEL SYSTEMS, LLC, et al.,

Defendants, counterclaimants, and third-party plaintiffs,

vs.

STEPHEN LAWRENCE CHASSE and JOHN MICHAEL EVANS,

Third-party defendants.

4:20-CV-3127

MEMORANDUM AND ORDER ON CLAIM CONSTRUCTION

This action is before the court to resolve issues of claim construction after a hearing pursuant to *Markman v. Westview Instruments*, Inc., 517 U.S. 370 (1996). The defendants—Precision Steel Systems, Donner Steel Works, and Nicholas Donner—have asked the Court to construe three sets of claim terms in the '588 patent: "adjustors" and its related terms and phrases, "ink dispenser" or "device" and their related terms and phrases, and "controller" or "control panel" and their related terms and phrases. Filing 195 at 7. Similarly, the defendants have identified three sets of claim terms in the '826 patent that

they think the Court should construe: "marking device" and its related terms and phrases, "ink dispenser" and its related terms and phrases, and "controller" and its related terms and phrases. Filing 195 at 25-26. The plaintiff, Automated Layout Technologies ("ALT"), submits that none of those terms require construction—that it's unnecessary to construe terms present in the allegedly infringing product, and that the ordinary and customary meaning of the claim terms are sufficient in any event. *See* filing 231 at 1-3. The Court has carefully reviewed the parties' submissions and pleadings, reviewed the relevant caselaw, and makes the following findings regarding claim construction.

## I. EVIDENTIARY OBJECTIONS

Before reaching the claim construction, however, there are some preliminary evidentiary issues that must be addressed. First, the defendants object to the opinions of Mark Webster, one of ALT's experts. *See* filing 219; filing 230 at 2-4; filing 250; filing 252 at 8-16. The defendants also object to the opinions of Stephen Chasse. *See* filing 201 at 3-4; filing 230 at 4. For its part, ALT objects to evidence adduced from Donald Volentine and Robert Gaskins. *See* filing 203 at 34-37.

### 1. MARK WEBSTER

The defendants' motion to exclude (filing 250)[1] asserts that Webster's testimony should be excluded because of his alleged failure to sufficiently

[1] The motion to exclude was filed well after the claim construction hearing, but the Court finds one basis for the subsequently filed motion to be relevant to the weight the Court gives Webster's testimony as it relates to claim construction—so, the Court discusses this aspect of the defendants' motion here.

explain "the ordinary level of skill in the art." Filing 252 at 7-17. It matters because generally, as will be explained in more detail below, a claim term is given the ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of invention. *InTouch Techs., Inc. v. VGO Commun., Inc.*, 751 F.3d 1327, 1339 (Fed. Cir. 2014); *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1361 n.3 (Fed. Cir. 2008). "Here," the defendants claim, "Webster has failed to offer a sufficient explanation of the level of skill in the art, despite his admitted reliance on the perspective of a hypothetical [person of ordinary skill in the art]. His opinion merely recites the factors that he understands are relevant to that determination, without actually applying them." Filing 252 at 11.

In his expert report, Webster said that "[t]he level of ordinary skill in the art here is experience with metal railing assembly, including layouts and understanding drawings, and [computer numerical control] machine and computer controlled positioning machine experience." Filing 254-1 at 17. Webster's opinion, the defendants argue, is "devoid of any description of the education or experience required of a [person of ordinary skill in the art]." *See* filing 252 at 13 n. 3.[2]

Factors that may be considered in determining level of ordinary skill in the art include the: (1) educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity

---

[2] The Court does not understand the defendants to be objecting to the sufficiency of Webster's *own* experience as a mechanical engineer to establish foundation for his opinions. *See* filing 252 at 2-3; *see also* filing 254-1 at 8-10 (describing Webster's background and experience); *Kyocera Senco Indus. Tools Inc. v. Intl. Trade Comm'n*, 22 F.4th 1369, 1376-77 (Fed. Cir. 2022) (to offer expert testimony from perspective of a skilled artisan in a patent case, witness must at least have ordinary skill in the art).

with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field. *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007).[3] Webster's declaration substantially recites these factors, and Webster says he considered them. Filing 204-1 at 6.

But it's not clear how. In his declaration, Webster describes *himself* as "both an expert and a person of at least ordinary skill in the art in the field of the inventions." Filing 204-1 at 3. It's difficult to evaluate his opinions without knowing the difference—that is, where the line is drawn between someone with ordinary skill in the art and someone with *extraordinary* skill in the art. And Webster's deposition testimony didn't help: After an extensive and largely fruitless colloquy on the subject, Webster ended up at "the person of ordinary skill in this art would be someone who has the experience and the knowledge to be able to combine the different elements of the patent or the different components of the patent." Filing 254-5 at 92-93.[4]

But that just creates a tautology: When the question is whether and how a person of ordinary skill in the art would understand patent language, it's hard for the Court to credit Webster's opinion on that question when his definition of "person of ordinary skill in the art" is essentially "someone who

---

[3] Much of the authority regarding a "person of ordinary skill in the art" arises in the context of obviousness. *See, e.g., id.* ALT doesn't argue that the inquiry is different when that term is used in different contexts, *see* filing 265 at 5, so the Court regards authority on the subject as interchangeable.

[4] The defendants have moved to supplement the record to include Webster's deposition testimony. Filing 251. The only opposition ALT offers to that motion is that the supplement "will not change the facts of this case," and that "there is no reason to supplement the record with evidence that is redundant of evidence already of record." Filing 265 at 19-20. But the defendants disagree, and ALT has identified no way in which it is unfairly prejudiced by the supplement, so the defendants' motion will be granted.

would understand the patent." While this does not render Webster's opinions wholly inadmissible as they relate to claim construction, they do affect the weight the Court affords to those opinions.

The defendants also object to Webster's declaration on the basis that it was asserted only in response to the initial claim construction briefs, and Webster had not previously been disclosed. Filing 219 at 2. That might have had some weight at the time, but at this point the Court finds—given the plethora of subsequent opportunities to respond and present evidence in support of those responses—that the defendants were not prejudiced by any belated disclosure. So, their objection, on that basis, is overruled. The defendants' motion to exclude raises other objections to Webster's proposed opinion testimony; *see* filing 252, but they will be addressed in a separate order.

### 2. STEPHEN CHASSE

The defendants argue that the affidavit testimony of one of the Lightning Rail's two inventors, Stephen Chasse, should be "afforded no weight." Filing 201 at 3. It's not entirely clear whether the defendants' argument is merely a general argument about the persuasive value of that affidavit, or is meant to be an objection to admissibility. *See* filing 201 at 3-4.

But the correct argument, as the Court understands it, goes to weight and not admissibility. The defendants cite authority suggesting that the testimony of an inventor concerning claim construction is "entitled to little or no consideration" because it "often is a self-serving, after-the-fact attempt to state what should have been part of his or her patent application." Filing 201 at 3 (quoting *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997) (quoting *Markman*, 52 F.3d at 983)). ALT, for its part, counters with authority stating that "inventors are typically persons skilled in the field of the invention and that patents are addressed to and intended to be

read by others of skill in the pertinent art." Filing 233 at 18 n.8 (quoting *Phillips v. AWH Corp.,* 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*)).

Classe, for his part, averred that he had relevant experience and was, himself, "a person of ordinary skill in the art." Filing 194-1 at 2. The Court will consider his opinions as predicated on that foundation, while recognizing the distinction between the objective perspective of a person of ordinary skill in the art, and the subjective intent of an inventor. *Cf. Life Techs., Inc. v. Clontech Lab'ys, Inc.*, 224 F.3d 1320, 1325 (Fed. Cir. 2000).

### 3. DONALD VOLENTINE

ALT contends that the declaration of Donald Volentine should be given little weight because (1) he reached legal conclusions, although he's not a lawyer, and (2) his opinions weren't credited by the PTO during reexamination of the '826 patent. Filing 203 at 35. But the Court is capable of distinguishing what Volentine averred as a person of ordinary skill in the art of fabrication layout tables,[5] about what such a person would make of the language of the patent, from any legal conclusions that might be drawn from such statements. Nor should the Court discount an opinion simply because it apparently wasn't credited by the PTO—the Court is not bound by the PTO's decision. *See MiMedx Grp., Inc. v. Tissue Transplant Tech., Ltd.*, 354 F. Supp. 3d 742, 754 (W.D. Tex. 2018); *see also St. Clair Intell. Prop. Consultants, Inc. v. Matsushita*

[5] ALT "disagrees that Mr. Volentine is either an expert or a person of ordinary skill in the art" and "reserves the right to challenge Mr. Volentine's purported 'expert' status and any future report he may submit in expert discovery." Filing 203 at 35 n.4. The Court's not sure what to do with that, because Volentine explained his experience and said he was a person of ordinary skill in the art, and ALT really hasn't provided the Court with a basis to disagree.

*Elec. Indus. Co.*, 691 F. Supp. 2d 538, 551 n.9 (D. Del. 2010); *cf. In re Donaldson Co., Inc.*, 16 F.3d 1189, 1192 (Fed. Cir. 1994).

### 4. Robert Gaskins

Finally, ALT contends that the deposition testimony of Robert Gaskins is entitled to no weight. Filing 203 at 34. ALT contends that Gaskins wasn't offered as an expert and didn't claim to be a person of ordinary skill in the art, and that his opinion regarding claim terms "in a vacuum" isn't a proper means-plus-function analysis. Filing 203 at 35-37. On the first point, the Court agrees. Whether the terms "adjustor" and "ink dispenser" would connote sufficient structure to a person of ordinary skill in the art might—even in a "vacuum"—have some relevance, but Gaskins' testimony suffers from a similar deficiency to Webster's—without a clear connection to what a person of ordinary skill in the art would make of the claim language, it's hard for the Court to afford it significant weight.

## II. CLAIM CONSTRUCTION

With those preliminary matters out of the way, the Court turns to the substance of claim construction.

### 1. Principles of Claim Construction

The claims of a patent define the scope of the patent. *Phillips,* 415 F.3d at 1312. The claims of a patent are of primary importance in determining what is patentable and the function and purpose of a claim is to delimit the right to exclude." *Id.* at 1312. The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370 (1996).

The construction of the terms in a patent is a matter of law reserved entirely for the court. *Markman,* 517 U.S. at 372; *Range of Motion Prods., LLC v. Armaid Co. Inc.*, 166 F.4th 981, 988 (Fed. Cir. 2026). A claim construction order dictates how the Court will instruct the jury regarding a claim's scope. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.,* 521 F.3d 1351, 1359 (Fed. Cir. 2008). The Court is not obligated to construe terms with ordinary meanings. *Id.* However, when the parties raise an actual dispute regarding the proper scope of these claims, the Court must resolve those claims, not the jury. *Wonderland Switzerland AG v. Evenflo Co., Inc.*, 162 F.4th 1346, 1354 (Fed. Cir. 2025).

The words of a claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art in question at the time of the invention. *Phillips,* 415 F.3d at 1313; *see also Sound View Innovations, LLC v. Hulu, LLC*, 166 F.4th 958, 963 (Fed. Cir. 2026) (citing *World Class Tech. Corp. v. Ormco Corp.*, 769 F.3d 1120, 1123 (Fed. Cir. 2014)) (words of a claim are generally given their ordinary meaning in the context of the claim and the whole patent document). How a person of ordinary skill in the art understands a term provides an objective baseline to begin claim interpretation. *Id.* A person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed claim appears, but in the context of the entire patent, including the specification. *Id.* Absent contravening evidence from the specification or prosecution history, plain and unambiguous claim language controls the construction analysis. *DSW, Inc. v. Shoe Pavilion, Inc.,* 537 F.3d 1342, 1347 (Fed. Cir. 2008).

In some cases, the ordinary meaning of claim language may be readily apparent even to laypersons, and claim construction in such cases involves

little more than applying the widely accepted meaning of commonly understood words. *Phillips,* 415 F.3d at 1314. In those cases, general purpose dictionaries may be helpful. *Id*. However, in other cases, the meaning of a claim term as understood by persons of skill in the art is not so readily apparent. *Id.* In those cases, the Court "must look to those sources that are available to the public that show what a person of skill in the art would have understood the disputed claim language to mean." *Id.* at 1314. "Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* (quotation omitted).

The claims themselves may provide substantial guidance as to the meaning of particular claim terms, apart from the written description and the prosecution history. *Id.* The context in which a term is used is highly instructive—other claims of the patent in question can also be "valuable sources of enlightenment as to the meaning of a claim term," as can differences among claims. *Id.*

Unless otherwise compelled, when different claims of a patent use the same language, that language should be given the same effect in each claim. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004). While not an absolute rule, all claim terms are presumed to have meaning in a claim. *Id*. And when an applicant uses different terms in a claim it is permissible to infer they intended their choice of different terms to reflect differentiation in the meaning of those terms. *Id*. In particular, where two claim terms differ by a matter of degree, perhaps by use of a modifier for one term and not the other, a proper construction should give effect to that difference. *Lab'y Corp. of Am. Holdings v. Qiagen Scis., LLC*, 148 F.4th 1350,

1358 (Fed. Cir. 2025) (citing *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254-55 (Fed. Cir. 2011)).

And because the claims do not stand alone, but are part of a fully integrated written instrument, the specification is usually the best guide to the meaning of a disputed term. *Phillips,* 415 F.3d at 1314. While there is no magic formula for conducting claim construction, the claim language and the specification, *i.e.* written description, are the dominant sources of interpretation. *Causam Enters., Inc. v. ecobee Techs. ULC*, 155 F.4th 1347, 1353 (Fed. Cir. 2025). The specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess; in such cases, the inventor's lexicography governs. *Phillips,* 415 F.3d at 1314.

The patent's prosecution history should also be considered, but second in importance to the patent's specification. *See id.* at 1317. Although intrinsic evidence is preferred, the Court may also rely on extrinsic evidence "which consists of all evidence external to the patent and prosecution history including expert and inventor testimony, dictionaries and learned treatises." *Id.* at 1323. But although courts are permitted to consider extrinsic evidence, such evidence is generally of less significance than the intrinsic record. *Id.* at 1317 (citing *C.R. Bard, Inc. v. U.S. Surgical Corp.,* 388 F.3d 858, 862 (Fed. Cir. 2004)). Extrinsic evidence may not be used "to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015).

Even though claims must be read in light of the specification of which they are a part, it is improper to read limitations from the written description into a claim. *Bradium Techs. LLC v. Iancu*, 923 F.3d 1032, 1049 (Fed. Cir. 2019). The distinction between using the specification to interpret the meaning

of a claim and importing limitations from the specification into the claim can be difficult to apply in practice. *Phillips,* 415 F.3d 1323. The purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so, and "[o]ne of the best ways to teach a person of ordinary skill in the art how to make and use the invention is to provide an example of how to practice the invention in a particular case." *Id.* On reading the specification in that context, it will often become clear whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive. *Id.* Claims are not limited to the preferred embodiments disclosed in the specification. *Id.* at 1323. But a claim construction that excludes a preferred embodiment is rarely, if ever correct and would require highly persuasive evidentiary support. *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1372 (Fed. Cir. 2022).

## 2. DISCUSSION

Turning to actual claim construction, the initial issue is which terms to construe. ALT insists that the Court shouldn't construe terms that wouldn't affect the infringement analysis, and the only term that the defendants deny infringing is "adjustor." *See* filing 231 at 3.

But that's not really true, because there's a difference between the defendants admitting that their product possesses a limitation, and admitting *liability* for infringement. The Court agrees that terms should only be construed to the extent they're in controversy, and only to the extent necessary to resolve the controversy. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999). But the "infringement analysis," *see* filing 231 at 3, in this case isn't resolved by the defendants' admission that their product

possesses a limitation, because invalidity is a defense to liability. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015). Accordingly, the Court generally agrees with the defendants that construction of several of the disputed terms is necessary as a predicate to resolving liability, whether or not the defendants' product possesses the limitations at issue.

The Court will address each term in more detail below, but as an overview: The Court generally agrees with the defendants that most of the disputed terms require means-plus-function constructions, because the claim terms either fail to recite sufficiently definite structure, or else recite function without reciting sufficient structure for performing the function. *See Magnolia Med. Techs., Inc. v. Kurin, Inc.*, 169 F.4th 1094, 1105-06 (Fed. Cir. 2026) (citing *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015)).

(a) Means-Plus-Function Claims

*(i) Identifying Means-Plus-Function Claims*

Means-plus-function claiming allows a patentee "to express a claim limitation by reciting a function to be performed rather than by reciting structure for performing that function, while placing specific constraints on how such a limitation is to be construed." *Gramm v. Deere & Co.*, 169 F.4th 1353, 1359 (Fed. Cir. 2026) (citing *Williamson*, 792 F.3d at 1347); *see also* 35 U.S.C. § 112(f). The first inquiry in determining whether a claim term invokes § 112(f) is whether the claim limitation uses the word "means." *Magnolia Med. Techs.*, 169 F.4th at 1105 (citing *Williamson*, 792 F.3d at 1348). If so, there is a rebuttable presumption that § 112(f) applies; if not, there is a rebuttable presumption that the provision does not apply. *Id.* (citing *Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*, 899 F.3d 1291, 1298 (Fed. Cir. 2018)).

> Where, as here, the claim limitation does not use the word "means," the presumption that § 112(f) does not apply will be overcome if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function. The essential inquiry is not merely the presence or absence of the word "means" but whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure.

*Id*. at 1105-06 (citations and quotations omitted).

*(ii) Construing Means-Plus-Function Claims*

District courts undertake a two-step analysis when construing means-plus-function terms: First, the court must identify the claimed function. Second, the court must ascertain any corresponding structure disclosed in the specification. *Gramm*, 169 F.4th at 1363. To qualify as corresponding structure, the intrinsic evidence must clearly link or associate that structure to the function recited in the claim. *Id.* at 1359 (citing *Williamson*, 792 F.3d at 1352). The Court must limit the relevant limitation to *only* that structure corresponding to the claimed function and equivalents thereof—nothing more. *Id.* (citing *Williamson*, 792 F.3d at 1347). In other words, a means-plus-function claim limitation covers only the structure corresponding to the claimed function and its equivalents. *Id.*

(b) The Disputed Terms

*(i) Adjustors*

Each independent claim of the '588 patent—claims #1, #11, and #23—include "one or more adjustors attached to the table, each adjustor configured to adjust a position of each of the one or more guide rails so that each of the one or more guide rails extends linearly along the work surface . . . ." Filing 124-1 at 20; filing 124-7 at 4.[6]

The defendants argue that "adjustor" is a means-plus-function term, as the term is not modified or given any gloss connoting structure, but instead purely claims the function it performs: Adjusting the position of the guiderail(s) on the work surface. Filing 195 at 9. ALT responds that "[t]he phrase 'adjust'/'adjustor' provides all the structure that is needed in the context of the claim" and that "the claim term 'adjust'/'adjustor' also is modified by further structure, material, and acts within the claims themselves, thereby precluding means-plus-function treatment." Filing 203 at 30.

The Court agrees with the defendants. The word "adjustor" is, to begin with, an agent noun, meaning that the word simply denotes the performer of an action. *See generally* Michelle Aspen, *Considerations for Means-Plus-Function Construction*, 21 Chi.-Kent J. Intell. Prop. 1, 7 (2021). Unless an agent noun has acquired another definition connoting a specific piece of hardware, it is a purely functional term that indicates no more structure than the function it performs. *See id.* And ALT has identified no structure particularly associated with the term.

For instance, Webster avers, based on a dictionary definition, that "'adjust'/'adjustor' means '[t]o arrange, alter, or modify so as to put into a

---

[6] Claims 1 and 23, post-reexamination, specify a "steel" work surface, *see* filing 124-7 at 4, but that difference is immaterial to claim construction.

proper order; to position, configure, or set up properly' and/or '[t]o be capable of being arranged, altered, or modified in this way.'" Filing 204-1 at 17. Chasse averred similarly. Filing 194-1 at 7. But that's just describing the function of "adjust[ing]," not a structure for accomplishing it. The connecting term "configured to" does not necessarily avoid means-plus-function claiming because that depends on the specific context of the patent at issue. *Fintiv, Inc. v. PayPal Holdings, Inc.*, 134 F.4th 1377, 1382-83 (Fed. Cir. 2025). And "here, the purely functional claim language reciting that the [] terms are configured or operated to complete an action provides no structure." *See id*. at 1383.

Nor does the "further structure, material, and acts within the claims themselves" identified by ALT help. ALT points to the fact that the claim refers to "'one or more adjustors attached to the table' and 'guide rails so that each of the one or more guide rails extends linearly.'" Filing 203 at 30. But that describes *where* the adjuster is, not *what* it is. ALT further asserts that "[i]n addition to structure, the claims go on to elaborate material ('steel work surface') and specific, detailed acts within the claim itself to perform entirely the recited function (e.g., 'adjust a position of each of the one or more guide rails' and 'extends linearly along the steel work surface')." Filing 203 at 30. But the "steel work surface" isn't the material of the adjustor, and the rest just describes the function of "adjust[ing]" using more words.

Accordingly, the Court concludes that the "adjustor" limitation requires a means-plus-function construction. The recited function is "adjusting a position of each of the one or more guide rails so that each of the one or more guide rails extends linearly along the work surface."

Therefore, defendants argue, the '588 patent only covers those structures disclosed by the specification, which in this case is one structure:

> In one example, the adjustors are a number of steel plates welded to the base. Within each plate is a threaded hole to receive a fastener, such as a bolt. The bolt is threaded into the hole within the plate so that it contacts a bottom side of the guide rail. The contact between the bolt and the guide rail causes the guide rail to move upward, thus raising that portion of the guide rail. The position of that portion of the guide rail can be adjusted by threading the bolt into or out of the plate, depending on the given application.

Filing 124-1 at 16. The Court agrees that the structure disclosed by the specification corresponds to the claimed function of the "adjustor." Accordingly, the Court finds that the corresponding structure is "one or more steel plates welded to the base, within each of which is a threaded hole to receive a fastener threaded into or out of the plate such that the fastener contacts a bottom side of the guard rail, or the structural equivalents of such plates and fasteners."[7]

*(ii) Ink Dispenser*

a. '588 Patent

Independent claims #1 and #23 of the '588 patent contain the following limitation: "an ink dispenser attached to the beam and configured to move along the beam in a second direction different from the first direction, the ink dispenser further configured to dispense ink directly onto the work surface of the table . . . ." Filing 124-1 at 20. This limitation, the Court concludes, requires means-plus-function construction for reasons similar to the "adjustor" claim. A

[7] The Court declines the defendants' invitation to limit the disclosed structure to *vertical* adjustment—that's a description of the function, not the disclosed structure to perform it.

"dispenser" is, again, an agent noun that simply describes a function—in this case, somehow dispensing ink—and ALT has provided the Court with no persuasive evidence suggesting that the term "ink dispenser" would implicate any particular structure to a person of ordinary skill in the art.

ALT's reliance on *DoggyPhone LLC v. Tomofun, LLC*, No. 2:19-CV-1901, 2022 WL 3346421 (W.D. Wash. Aug. 12, 2022), does not convince the Court otherwise. In that case, the claimed invention was a system "for facilitating remote human-pet communication," and included "a treat bin" and "a food dispenser that dispenses treats from the treat bin." *Id*. at *1. The *DoggyPhone* court concluded that "food dispenser" was not means-plus-function claiming because "'dispenser' is similar to the words 'brake,' 'clamp,' or 'filter,' in that it has taken on a structural dimension signifying more than merely the function it performs." *Id*. at 4. The *DoggyPhone* court further concluded that the modification "food"—obviously dog food—further connoted structure, as did the connection to the "treat bin." *Id*.

But to the extent that *DoggyPhone* is persuasive, it is distinguishable. There are far more ways to dispense ink than to dispense dog food. And the structure containing the material to be dispensed in *DoggyPhone*—the "treat bin"—was found in the claim itself. *See id*. at 1. Here, on the other hand, the structure containing the ink—an "ink reservoir"—is described only in the specification. *See* filing 124-1 at 15, 17. The structure for the "dispenser" described in *DoggyPhone* was limited, but the '588 patent provides even less.

Accordingly, "ink dispenser" requires means-plus-function construction. The recited function is "moving along the beam in a second direction different from the first direction and dispensing ink directly onto the work surface of the table." The corresponding structure is

> a moveable nozzle or its structural equivalent, configured to move vertically relative to the work surface and positioned at a distance from the work surface so that ink can be deposited on the surface in a clear and defined way, attached to an ink reservoir or its structural equivalent which holds a supply of ink that can be transferred to the nozzle using a fluid pump or the structural equivalent thereof.

*Cf.* filing 124 at 15.

Independent claim #11 of the '588 patent says even less: It only contains "a device attached to the beam and configured to move along the beam in a second direction different from the first direction, the device configured to provide a pattern of the railing assembly directly on the work surface . . . ." Filing 124-1 at 20. "Device" is a well-known nonce word that reflects nothing more than a verbal construct tantamount to using the word "means," because it doesn't sufficiently connote structure. *See Williamson*, 792 F.3d at 1350.

It is, in fact, not even clear whether ALT is meaningfully contending otherwise with respect to claim #11. *See* filing 203, *passim*. Accordingly, the Court construes this limitation to have the function of "moving along the beam in a second direction different from the first direction and providing a pattern of the railing assembly directly on the work surface," and a corresponding structure identical to that for claims #1 and #23.

b. '826 Patent

Independent claim #15 of the '826 contains a similar limitation: "an ink dispenser coupled to and movable along the beam, the ink dispenser configured to contact the steel work surface and mark the steel work surface with an assembly pattern that outlines one or more metal assembly components . . . ."

Filing 124-2 at 21. ALT does not distinguish this limitation from the limitations in the '588 patent and, in fact, insists that "ink dispenser" should be given the same meaning in both patents.

The Court agrees to a point. ALT notes the presumption that the same claim term in the same patent or related patents carries the same construed meaning. *See* filing 231 at 6 (citing *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003)). But that presumption can be rebutted where the terms are used differently in context—such as, for instance, where the function of a means-plus-function limitation is described differently. *Cf. Adidas AG v. Under Armour, Inc.*, No. 14-CV-130, 2015 WL 3766017, at *2-3 n.3-4 (D. Del. June 15, 2015).

Accordingly, the recited function for "ink dispenser" in the '826 patent is "contacting and marking the steel work surface with an assembly pattern that outlines one or more metal assembly components." The associated structure found in the specification is identical to that disclosed in the '588 patent, except that pursuant to dependent claim #16, the "ink dispenser" in the '826 may also include a "marker." *See* filing 124-2 at 21.

*(iii) Controller/Control Panel*

As the Court understands the defendants' argument, construction of the terms "controller" and "control panel" in the '588 patent and "controller" in the '826 patent is relevant to establish whether the PLS-624 infringed the '588 patent, and whether the '826 patent is entitled to the '588 patent's priority date. *See* filing 195 at 21-25, 32-33; filing 230 at 10; filing 232 at 3-4. As will be addressed in an accompanying memorandum and order, the Court has resolved those questions on other grounds. Accordingly, claim construction of these terms is unnecessary.

*(iv) Marking Device*

Independent claim #1 of the '826 patent includes the following limitation: "a marking device attached to the beam and movable along the beam, the marking device configured to move into contact with the metal work surface and mark the metal work surface with an assembly pattern that outlines one or more components of the railing assembly . . . ." In dependent claim #2, that "marking device" is an "ink dispenser." In dependent claim #3, the "marking device" is a "marker." In independent claim #10, the corresponding limitation is "a marking device attached to the beam and movable along the beam, the marking device configured to mark the metal work surface with an assembly pattern . . . ." Filing 124-2 at 21.

For reasons that should be evident from the issues previously discussed, those limitations require means-plus-function construction. "Device" is a classic nonce word, *see Williamson*, 792 F.3d at 1350, and the phrase "marking device" suggests even less structure, even read in context, than did "ink dispenser." The function of the "marking device" in claim #1 is "moving along the beam and contacting and marking the metal work surface with an assembly pattern." In claim #10, contact is not required: "moving along the beam and marking the metal work surface with an assembly pattern."

The written description of the invention in the '826 patent, as with the '588 patent, includes the structure of

> a moveable nozzle or its structural equivalent, configured to move vertically relative to the work surface and positioned at a distance from the work surface so that ink can be deposited on the surface in a clear and defined way, attached to an ink reservoir or its structural equivalent which holds a supply of ink that can be

transferred to the nozzle using a fluid pump or the structural equivalent thereof.

But the '826 patent also discloses a "marker." Accordingly, the Court concludes that the means of performing the function of a "marking device" in the '826 patent is the "moveable nozzle" structure set forth above, *or* a "marker."

## III. CONCLUSION

IT IS ORDERED:

1. The Court adopts the claim constructions set forth above.

2. The defendants' objection to evidence and argument (filing 219) is granted in part and denied in part as set forth above.

3. The defendants' motion to supplement the record (filing 251) is granted.

Dated this 2nd day of September, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge